UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X

| | |
|---|---|
| LEVITON MANUFACTURING CO., INC., | Docket No. 13-cv-1629 (LGS)(SN) |
| Plaintiff, | |
| -against- | PLAINTIFF'S PROPOSED FINDINGS OF FACT IN SUPPPORT OF DEFAULT JUDGMENT |
| FASTMAC PERFORMANCE UPGRADES, INC. and TRUEPOWER, INC., | |
| Defendants. | |

------------------------------------------------------------------ X

Plaintiff, **LEVITON MANUFACTURING CO., INC.** ("Plaintiff" or "Leviton"), submits the following Proposed Findings of Fact in accordance with the Scheduling Order for Damages Inquest, dated September 16, 2013 of this Court (the "Scheduling Order):[1]

### FINDINGS OF FACT

**Background**

1. Founded in 1906, Plaintiff is engaged in the business of manufacturing, promoting, advertising, distributing and selling electrical wiring devices, network and data center connectivity solutions and lighting energy management systems (Dkt. No. 1 at par. 10). For more than a century, Plaintiff has made a significant investment in research and development, manufacturing, distribution, human capital and training in order to deliver products of the highest quality and safety ratings (Id.).

2. All of Plaintiff's facilities and supporting organizations are ISO 9000-9001 certified; Plaintiff's testing laboratories are certified by Underwriters Laboratories, Inc. ("UL");

---

[1] In lieu of Conclusions of Law, Plaintiff submits herewith a Memorandum of Law setting forth the legal principles applicable to Plaintiff's claims for damages, as permitted by the Scheduling Order.
370371

and all of Plaintiff's wiring products are certified by various independent testing facilities (Dkt. No. 1 at par. 12; Dkt. 4 at par. 16; Dkt. No. 5 at par. 6).

3. Plaintiff's wiring products which are made for North America are designed to be used and installed in accordance with the National Electrical Code (NEC). The NEC specifies that all electrical products must be "Listed" with a Nationally Recognized Testing Laboratory (Dkt. No. 1 at par. 13; Dkt. 4 at par. 15; Dkt. No. 5 at par. 6).

4. UL is a Nationally Recognized Testing Laboratory. As such, UL reviews electrical products for compliance with the NEC. UL's Standard for Safety UL-498 sets safety standards for electrical receptacles, including Plaintiff's receptacles, such as those which feature 2 three-prong outlets, commonly used in residential and commercial applications (Dkt. No. 1 at par. 14; Dkt. No. 4 at par. 15-16).

5. Plaintiff's receptacles are Listed with UL and bear a "List" number issued by UL indicating satisfaction with rigorous safety standards (Dkt. No. 1 at par. 16; Dkt. No. 4 at par. 14-16).

6. One of Plaintiff's most important achievements is the consistency with which its products meet or exceed industry standards for both quality and safety. Over the last century, Plaintiff's leadership in the field of providing first-class electrical and data wiring products has caused the Leviton name to be regarded as a symbol of quality craftsmanship and engineering (Dkt. No.1 at par. 15; Dkt. 5 at par. 7).

7. Plaintiff owns numerous trademarks, service marks, logos, taglines, tradenames and distinctive features for its electrical wiring devices, network and data center connectivity solutions and lighting management systems (Dkt. No. 1 at par. 17; Dkt. No. 5 at par. 10).

370371

Among the trademarks and trade dress utilized by Plaintiff to identify the source of its products are the trademarks LEVITON®, **LEVITON** ® and DECORA® (collectively, the "Leviton Marks"). Specifically, Plaintiff is the owner of the following registered United States trademarks (Dkt. No. 1 at par.18):

| Trademark | Registration No. |
|---|---|
| LEVITON | U.S. Trademark Reg. No. 2594280 |
| LEVITON (logo) | U.S. Trademark Reg. No. 1892953 |
| DECORA | U.S. Trademark Reg. Nos. 1004736 and 2594280 |

8.  All of the registered trademarks listed above are valid and subsisting, and have become incontestable (Dkt. No. 1 at par. 19; Dkt. 5 at par. 11).

9.  Plaintiff has spent millions of dollars to advertise and promote extensively its electrical wiring devices, network and data center connectivity solutions, and lighting energy management systems under the Leviton Marks (Dkt. No. 1 at par. 20; Dkt. No. 5 at par. 12).

10.  As a result of the significant effort, time and expense of Plaintiff for over one hundred years, the Leviton Marks reflect Plaintiff's stellar reputation and have become strong and famous source identifiers for Plaintiff's products in North America and throughout the world (Dkt. No.1 at par. 21; Dkt. 5 at par. 13).

11.  Defendants FastMac Performance Upgrades, Inc. ("FastMac") and TruePower, Inc. ("TruePower") (collectively, the "Defendants") manufacture and sell a device marketed by them as the "U-Socket," which is a combination electrical receptacle and USB charger. (Dkt. 1 at par. 24; Dkt. 18 at par. 7).

12. To manufacture the U-Socket, Defendants first acquired genuine Leviton electric receptacles, and Leviton wallplates, both of which bear the Leviton Marks, and the Leviton receptacles also bear Leviton's UL List number (Dkt. No. 1 at par. 25; Dkt. No. 4 at par. 9). Then, without Plaintiff's permission or authorization, Defendants extensively and materially alter, change and modify the Leviton products by (i) adding, through electrical wires and connections, non-Leviton voltage transforming circuitry and USB ports, which may compromise safety, integrity and compliance with applicable codes and certification standards; and (ii) cutting holes within the genuine Leviton wallplate to accommodate such modification, which may compromise safety, integrity, appearance and compliance with applicable codes and certification standards (Id.).

13. The modifications made by Defendants to Plaintiff's genuine products to create the U-Socket were so substantial that they have changed an otherwise genuine product into a counterfeit, or materially different product (Dkt. No. 1 at par. 24-37; Dkt. No. 4 at par. 10).

14. By selling the modified electrical receptacles and wallplates under the Leviton trademarks and/or tradenames without any authorization and/or oversight by Plaintiff, Defendants have: (1) unlawfully infringed upon Leviton's trademarks; (2) deceived and confused consumers and end-users into believing the U-Socket is approved by, authorized by, or associated with Leviton; (3) deprived Leviton of its right to control the quality of its products; and (4) misrepresented to the consuming public that its U-Socket meets Leviton's, as well as, independent safety standards (Dkt. No. 1 at par. 26-33; Dkt. No. 4 at par. 18-27; Dkt. No. 6 at par. 11 and 47-61).

**Procedural History**

15. On March 12, 2013, Plaintiff commenced this action against Defendants for

370371

trademark infringement, false designations of origin and dilution under 15 U.S.C. § 1051 *et seq.*, as amended, (the "Lanham Act"), false and misleading commercial activities arising under New York General Business Law, §§ 349, 350, 360-K and 360-1, as well as the common law of the State of New York (Dkt. No.1 at par. 1).

16. On March 19, 2013, the Complaint was served upon TruePower by personal service to "Pablo Smith," a person of suitable age and discretion who identified himself as being authorized to accept service on behalf of defendant TruePower. (Dkt. No. 48, Exh. B).

17. On March 26, 2013, the Complaint was served upon FastMac by personal service on its President, Abbi Vakil (Dkt. No. 48 at par. 6, Exh. C).

18. On March 28, 2013, the Complaint was also served on TruePower via regular first class mail (Dkt. No 48 at par. 7, Exh. D).

19. Copies of the affidavits of service were filed with the Court on June 27, 2013 (Dkt. Nos. 34-39).

20. On March 15, 2013, Plaintiff moved for a preliminary injunction against Defendants to enjoin them from, *inter alia*, continuing to manufacture, market and sell the U-Socket with the Leviton trademarks thereon (Dkt. Nos. 3-7).

21. On March 17, 2013, FastMac appeared through counsel, Perry J. Narancic, Jr., Esq., answered the Complaint and opposed Plaintiff's motion for a preliminary injunction (Dkt. Nos. 15-18).[2]

22. After full briefing and oral argument, by Order dated May 14, 2013, Judge Lorna G. Schofield granted Plaintiff's motion for a preliminary injunction and ordered a Fed. R. Civ.

---

[2] It should be noted that Mr. Narancic appeared solely on behalf of defendant FastMac. As more fully set forth below, defendant TruePower has failed to appear and/or answer the Complaint.

Proc. Rule 26(f) discovery schedule. (The "May 14, 2013 Order") (Dkt. No. 23).

23. On May 23, 2013, Plaintiff served its First Request for Production of Documents and First Set of Interrogatories upon FastMac's counsel and upon TruePower. (Dkt. No. 48 at par. 16, Exh. G).

24. On June 7, 2013, Plaintiff served deposition notices upon Defendants for the deposition of a representative of FastMac and TruePower and of Abbi Vakil, (FastMac's President and Officer of TruePower), to be taken on June 27, 2013 and June 28, 2013, respectively (Dkt. No. 48 at par. 18, Exh. I).

25. Defendants failed to respond to Plaintiff's discovery demands, despite Plaintiff having sent a good faith letter, and failed to appear for their depositions (Dkt. No. 48 at par. 17, Exh. H, I, J).

26. On June 10, 2013, Plaintiff submitted a letter to the Court stating that FastMac had failed to certify its compliance with the Court's May 14th Order granting Plaintiff's motion for a preliminary injunction (Dkt. No. 29).

27. The following day, on June 11, 2013, Mr. Narancic filed a motion to withdraw as counsel for FastMac (Dkt. Nos. 26 -27), stating, among other things, that certain circumstances justified withdrawal based on the applicable rules of professional conduct, specifically with respect to FastMac's compliance with the May 14, 2013 Order.

28. By Order dated July 8, 2013 (the "July 8, 2013 Order"), Judge Schofield granted FastMac's counsel's application to withdraw as attorney of record (Dkt. No. 40).

29. The July 8, 2013 Order directed FastMac to obtain new counsel by July 24, 2013, and further advised the parties that the Court would entertain a motion for default judgment against FastMac should that defendant not obtain counsel by the aforesaid date (Id.).

30. In addition to Defendants' failure to comply with any of Plaintiff's discovery demands in accordance with the Discovery Order and failure to appear and give a deposition, FastMac failed to obtain new counsel in accordance with the July 8, 2013 Order (Dkt. No. 48 at par. 20.

31. Defendant TruePower neither appeared nor answered the Complaint in this action (Dkt. No. 48 at par. 24-26, Exh. K).

**Default Judgment is Entered against Defendant**

32. On August 2, 2013, Plaintiff brought an Order to Show Cause for a default judgment against Defendants to which Defendants did not respond (Dkt. Nos. 47-51). By Order dated August 20, 2013, (the "August 20, 2013 Order"), Judge Schofield granted Plaintiff's motion (Dkt. No. 52). The August 20, 2013 Order specifically provides, in part, that "Judgment by default is entered against Defendants FastMac and TruePower in an amount to be determined by the Court through a hearing," and further ordered that the matter be referred to this Court for further proceedings to determine the amount of damages, attorney's fees and costs to be awarded to Plaintiff (Dkt. No. 52 at p. 4).[3]

33. On or about August 28, 2013, Plaintiff provided a copy of the August 20, 2013 Order to Defendants (Schiano-Strain Declaration, dated October 16, 2013, Exh. A).

34. By Order dated September 16, 2013, this Court issued a Scheduling Order For Damages Inquest (the "Order for Damages Inquest,") (Dkt. No. 54), pursuant to which these Findings of Fact and accompanying Memorandum of Law concerning damages are submitted.

**Basis for Monetary Damages Against Defendants**

---

[3] The August 20, 2013 Order further Ordered permanent injunctive relief against Defendants, as specifically set forth in the Order and directed Defendants to issue a recall of all products, packaging and other materials bearing Plaintiff's trademarks (Dkt. No. 52 at p. 4-6).

7

370371

35. Plaintiff's damages are based upon Defendants' profits, treble damages, and the costs of the action, including attorneys' fees.

36. Abbi Vakil, the President of FastMac, admitted in a sworn Declaration submitted to the Court that "FastMac has sold approximately 68,000 U-Sockets incorporating the Leviton receptacle" (Dkt. No. 18 at par. 8; Dkt. No. 48, Exh. L).[4]

37. Four different U-Socket models are marketed and sold on various websites, including www.amazon.com, with an average price of $29.68. (Dkt. No. 48 at par. 29, Exh. M).

38. Having sold 68,000 U-sockets at an average price of $29.68 per unit, FastMac's sales of its U-Socket product sold under Plaintiff's trademarks and/or tradenames amounts to $2,018,240.

39. Based on the foregoing, as well as the reasons set forth in the accompanying Memorandum of Law, pursuant to 15 U.S.C. §1117(a), Plaintiff is entitled to a minimum of $2,018,240 in monetary damages.

**Basis for Treble Damages Against Defendants**

40. Plaintiff is entitled to treble damages under 15 U.S.C. §1117(b) based upon the Defendants' willful and reckless conduct, as set forth below.

41. By letters dated June 9, 2011 and November 27, 2012, Leviton twice demanded that FastMac immediately cease and desist from: (i) selling the modified products which bear the Leviton Marks; (ii) distributing and selling the modified products bearing the Leviton Marks through FastMac's distributors, resellers, sales agents, etc.; (iii) marketing and/or advertising the

---

[4] FastMac represented that it had sold 68,000 U-Sockets bearing Plaintiff's trademarks and/or tradenames as of March 25, 2013. That number has likely increased, as Defendants continued selling the U-Socket after that date, but failed to provide Plaintiff with any further sales information.

8

370371

modified products bearing the Leviton Marks, and (iv) using any photos, images, etc. of the modified product which bear the Leviton Marks (Dkt. No. 5 at par. 22-25, Exhs. B and C).

42. Defendants failed to respond to or comply with Plaintiff's demands and continued to manufacture, market, advertise, promote, sell and distribute its U-Socket product bearing the Leviton trademarks, therefore requiring Plaintiff to file this action (Id.).

43. Defendants also failed to comply with this Court's preliminary injunction order, dated May 14, 2013 (Dkt. No. 23). By that Order, Judge Schofield specifically ordered that Defendants include "stand alone packaging material, and attach a sticker to the back of the faceplate and to the receptacle, that prominently and legibly provide that the U-Socket is not produced or sponsored by, or in association with, Leviton" (Id.). (Emphasis added).

44. Instead of complying with the Court's Order, Defendants attached a sticker with print so small it is barely legible and reads:

In an effort to conserve Earth's precious resources and to manufacture products in the most energy efficient way possible, U-Socket is made using pre-existing 3rd party outlets. U-Socket is not endorsed or sponsored by those 3rd parties.

(Dkt. No. 48, Exh. P).

45. Plaintiff advised FastMac of its failure to comply with the specific terms of the July 8, 2013 Order, to which FastMac's former counsel advised that FastMac would remedy the noncompliance (Dkt. No. 48 at p. 7, fn. 3). Immediately thereafter, FastMac's counsel made his motion to withdraw as counsel of record, citing, among other things, FastMac's compliance with the Court's order as one of the reasons for the application (Dkt. No. 26-27).

46. Unable to defeat Plaintiff's motion for a preliminary injunction and apparently unwilling to comply with the preliminary injunction order, Defendants failed and refused to

9

370371

participate in any discovery in a purposeful and willful attempt to thwart Plaintiff's efforts to prosecute its claims, and forcing Plaintiff to incur unnecessary fees and costs.

47. Defendants' conduct is particularly troubling because, unlike Plaintiff's products, the U-Socket presents numerous and serious safety concerns which not only cause damage to Plaintiff's reputation and goodwill, but may also present serious safety concerns to the consuming public (Dkt. No. 4 at par. 19-26).

48. For example, it does not appear that Defendants conducted a test of the U-Socket carrying a full-rated electrical current. In the event that the U-Socket receptacle is erroneously reversed wired, a potential shock and/or fire hazard could result (Id.). Furthermore, Plaintiff's products were not designed nor certified to have a heat producing appendage, such as that used in the U-Socket, resulting in an elevated temperature and potentially unsafe electrical condition (Id.). The U-Socket also contains modifications which void the instructions for safe installation of the Plaintiff's products (Id.). Each of these hazards carries the potential of harm to the consumer.

49. In addition, according to the Declaration of Erich Joachimsthaler, dated March 14, 2013 (Dkt No. 6), Defendants' reckless conduct of materially altering the genuine Leviton products and then selling the modified product to the public without any regard for Plaintiff's quality assurance controls threatens the extensive amount of resources, research and hard work which Leviton has invested throughout the past century. "Once a brand is negatively perceived, it is very hard to rebuild the brand" (Dkt No. 6 at pp. 3-4; 54-61).

50. Because Defendants acted willfully and recklessly, both before and after this action was commenced, judgment in the amount of $6,054,720, representing treble the amount of

10

370371

Defendants' profits, in favor of Plaintiff and against Defendants, jointly and severally, is warranted.

**Basis for an Award of Costs and Attorneys' Fees to Plaintiff**

51. Based on the facts set forth above, Plaintiff submits that this case presents the "exceptional circumstances" contemplated by the Lanham Act to justify an award of attorneys fees and costs incurred by Plaintiff in connection with this action.

52. The Court is respectfully referred to the Declaration of Adam M. Cohen, dated October 16, 2013 (the "Cohen Declaration") and submitted herewith for a full and complete analysis of the basis for an award of costs and attorneys' fees to Plaintiff, pursuant to 15 U.S.C. 1117(b).

53. The facts set forth above establish that Defendants' violations of the applicable laws were willful.

54. The invoices sent by Plaintiff's counsel, Kane Kessler, P.C. ("Kane Kessler") in connection with this matter are attached as Exhibit C to the Cohen Declaration. Exhibit D to the Cohen Declaration reflects fees incurred by Kane Kessler in connection with this matter in the amount of $,201.25, but not yet billed to Plaintiff, and which Kane Kessler has agreed to reduce to $5,000. Exhibits C and D to the Cohen Declaration provide a detailed account of the time and disbursements expended and incurred in this matter by Kane Kessler and/or billed to Leviton (Cohen Decl. at par. 4-7).

55. The fees and disbursements reflected in Exhibits C and D to the Cohen Declaration were generated from Kane Kessler's accounting and billing system and from invoices uploaded to the Serengeti Tracker, and are based upon records maintained in the ordinary course of Kane Kessler's business (Cohen Decl. at par. 4).

56. The hourly rates charged by Kane Kessler are the standard and customary rates charged by Kane Kessler to its clients (Id.).

57. There were no bonus or contingent payments or any other arrangement that departed from Kane Kessler's standard billing practices and procedures (Id.).

58. The simple fee arrangement between Kane Kessler and Leviton was that Leviton agreed to pay Kane Kessler's time based on its customary hourly rates, as well as any disbursements made by Kane Kessler on behalf of Leviton (Id.).

59. The total legal fees and disbursements incurred and/or paid by Leviton equals $131,889.09 ($106,394.40 in fees and $25,494.69 in disbursements), of which $109,226.35 has already been paid by Plaintiff (Cohen Decl. at par. 5, Exhs. C and D).

60. The billing information for Kane Kessler set forth in Exhibit C to the Cohen Declaration reflects chronologically each line item of services and the time spent for each time keeper (Cohen Decl. at par. 6, Exh C).

61. There were four attorneys from Kane Kessler involved in this matter, whose background and qualifications are as follows (Cohen Decl. at par. 7):

(a) **Adam M. Cohen** is the Chair of Kane Kessler's intellectual property department. He was involved with the analysis and strategy regarding Plaintiff's claims under the applicable federal and state statutes and common laws. Mr. Cohen was also involved in analyzing and drafting the Complaint and Plaintiff's motion for a preliminary injunction.

Mr. Cohen received his law degree from Northwestern University in 1988 and was admitted to the New York bar in 1989. He is also admitted to practice before the United States District Courts for the Southern and Eastern Districts of New York and the United States Court of Appeals for the Second Circuit. His billing rate is $540 per hour.

12

370371

(b) **Dana M. Susman.** Dana Susman is a partner in Kane Kessler's litigation practice group. Ms. Susman is lead counsel on this matter and she has been involved in all aspects of the case, including without limitation, client meetings, drafting pleadings, motion papers (declarations, memoranda of law, notices, and similar documents), participating in Court conferences and arguments, settlement discussions, analysis and strategy, and overall case management and oversight.

Ms. Susman has extensive experience litigating cases in both State and Federal Courts for over 17 years, and her experience includes a wide range of commercial cases, including trademark, unfair competition, business fraud, and other commercial matters. Ms. Susman received her law degree from Brooklyn Law School in 1994. She is also admitted to practice before the United States District Courts for the Southern and Eastern Districts of New York and the United States Court of Appeals for the Second Circuit. Her billing rate is $485 per hour.

(c) **Gerard Schiano-Strain.** Gerard Schiano-Strain is an associate in the firm's litigation practice group. Mr. Schiano-Strain conducted hours of research, drafted all pleadings and motion papers, participated in Court conferences, client meetings and settlement discussions, was involved with litigation analysis and strategy, and managed the case from inception with Ms. Susman.

Mr. Schiano-Strain received his law degree from New York Law School in 2002, and he has been admitted to practice before the United States District Courts for the Southern and Eastern Districts of New York for more than 10 years, and his experience includes litigating complex commercial, construction, employment matters, and trademark matters. His billing rate is $375 per hour.

13

370371

(d) **Brendan P. McFeely.** Brendan McFeely is an associate in our firm's intellectual property department who was responsible for case research, analysis and strategy with respect to protecting Plaintiff's trademarks.

Mr. McFeely has 15 years of experience practicing intellectual property law, with a particular emphasis in trademark clearance and prosecution, licensing, trademark counseling, prosecution of infringement matters, and copyright infringement and unfair competition matters. Mr. McFeely received his law degree from Fordham Law School in 1998. He is admitted to the Bar of the State of New York and also admitted to practice before the United States District Courts for the Southern and Eastern Districts of New York, the United States Court of Appeals for the Second Circuit, and the United States Court of International Trade. His billing rate is $400 per hour.

62. The services performed were necessary for the prosecution of this action. Kane Kessler's standard and customary billing rates are reasonable for this jurisdiction and that all services detailed herein were performed in connection with this action. (Cohen Decl. at par. 8).

63. For the reasons set forth in Mr. Cohen's Declaration, and based upon the facts demonstrating Defendants' willful conduct set forth above, Plaintiff respectfully requests an award of fees to be included in a judgment in the amount of $106,394.40 in fees and $25,494.69 in disbursements, for a total of $131,889.09, which is fair and reasonable under the circumstances.

**Total Monetary Judgment**

64. Based on the foregoing, Plaintiff seeks an award of monetary damages, no part of which has been paid, as follows:

(a) granting judgment in favor of Plaintiff against Defendants, jointly and severally, in the amount of $6,054,720, plus interest thereon at the statutory rate of 9% per annum (or $1,492.95 per day) from June 9, 2011; and

(b) Costs in the amount of $25,494.69 and attorneys' fees in the amount of $106,394.40 (total of $131,889.09 in costs and fees), for a total monetary judgment amount of $_____, all pursuant to 15 U.S.C. § 1117.

**Injunctive Relief**

65. Plaintiff is entitled to the injunctive relief set forth in the August 20, 2013 Order and Judgment on Default.

## CONCLUSION

66. Based on the foregoing facts and principals of law set forth in the accompanying Memorandum of Law, Plaintiff Leviton Manufacturing Co., Inc. respectfully requests that a default judgment be entered against Defendants FastMac Performance Upgrades, Inc. and TruePower, Inc., jointly and severally, for the total amount of $_____, as set forth in paragraph 64 above, and for the injunctive relief previously issued by the Court.

Dated: New York, New York
October 16, 2013

Respectfully submitted,

**KANE KESSLER, P.C.**

By: /s/ Dana M. Susman
Dana M. Susman
Adam M. Cohen
Gerard Schiano-Strain
*Attorneys for Plaintiff*
1350 Avenue of the Americas
New York, New York 10019
(212) 541-6222
dsusman@kanekessler.com
acohen@kanekessler.com
gstrain@kanekessler.com